UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JEFFREY H. ROSEN et al., :
: ORDER
Plaintiffs, : 06 Civ. 3474 (LTS) (GWG)
:
-v.- :
:
MEGA BLOKS INC. et al., :
:
Defendants. :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

  A letter dated May 7, 2009 from plaintiffs raising a discovery issue has been referred to the undersigned. Defendants responded by letter dated May 10, 2009, and an additional letter was received from each side today. The letters raise two issues: (1) plaintiffs' request to compel production of documents; and (2) defendants' request to quash subpoenas.

Request to Compel

  In brief, plaintiffs assert that defendants were required to produce, in response to a previously-served discovery request, documents relating to a product line called MagNext.

  Early on in this case, the Court directed as follows:

> Discovery motions -- that is, any application pursuant to Rules 26 through 37 or 45 -- . . . must be made promptly after the cause for such a motion arises. In addition, absent extraordinary circumstances no such application will be considered if made later than 30 days prior to the close of discovery. Untimely applications will be denied.

See Order, dated August 2, 2006 (Docket #33), ¶ 2 (emphasis added). Expert discovery closed in this matter on December 5, 2008. See Memorandum Endorsed, filed July 24, 2008 (Docket # 130). Thus, absent a showing of extraordinary circumstances, or at a minimum "excusable neglect," see Fed. R. Civ. P. 6(b)(1)(B), the May 7 application is untimely.

  Here, no acceptable justification has been provided for the delay in making the application. According to plaintiffs, their request to compel production of these documents arose because of an April 24 ruling from Judge Swain denying their motion in limine. But as Judge Swain herself noted in making that ruling, the relevance of the subject matter of the request – whether Mega Bloks received an economic benefit from Magnetix after their introduction of the

MagNext line – should have been known to the plaintiffs at the latest when the expert report of Bradford Cornell was provided by Mega Bloks in October 2008. See Transcript of Conference, dated April 24, 2009, at 4. Moreover, Mega Bloks had made allegations on this very topic in their counterclaim even earlier, in July 2008. See Answer & Counterclaims, filed July 21, 2008 (Docket # 129), at 15, ¶ 7. There is no reason plaintiffs should have waited until now to assert their need for these documents. Notably, plaintiffs' own expert recognized that Cornell's report contained the argument regarding MagNext inasmuch as he specifically responded to it. See Analysis of the Bradford Cornell Report of Economic Damages dated October 29, 2008, at ¶ 8, 17 and pp. 15, 33, 37-38 (reproduced in part as Exhibit 13 to Declaration of Daniel P. Goldberg, filed April 10, 2009 (Docket # 185)).

While plaintiffs assert that the requested discovery will not delay the trial date, they have not controverted defendants' arguments that the discovery they seek is in fact burdensome. See Letter From Daniel P. Goldberg, dated May 10, 2009, at 2 (noting that the request will require a search of documents in the custody of eight employees). The request to compel this discovery must be viewed not in isolation but rather in the context of the fact the trial is scheduled to start in four business days. Moreover, it is inexplicable that defendants – having received the ruling on April 24, 2009, when the trial was scheduled to begin 16 business days later – would have waited until 9 business days had elapsed to make the request. Even with a planned break in the trial in June and the contention that the issues relating to these documents will not be reached until after the break, it is unfair, given the burdens of preparing for trial and the untimeliness of the request, to put defendants to the additional burden of searching for and producing these documents.

Request to Quash

Mega Bloks' letter seeks to quash subpoenas issued by plaintiffs to the Consumer Product Safety Commission ("CPSC") and to Mega Bloks' outside counsel in Washington, D.C. Because the subpoenas were not issued from the Southern District of New York but rather from the United States District Courts for the District of Maryland and the District of Columbia, it is not clear that this Court has the power to quash them, as defendants request. See Fed. R. Civ. P. 45(c)(3)(A) ("[o]n timely motion, the issuing court must quash or modify a subpoena"); 9 James Wm. Moore, et al., Moore's Federal Practice § 45.50[4] (3d ed. 2008) ("If a subpoena is issued by a district court other than the one in which the case is pending . . . , the proper court in which to file a motion to quash or modify the subpoena is the issuing court, not the court in which the action is pending."). Nonetheless, the Court deems it proper to explain its previous rulings on the scope of discovery for the benefit of these district courts (as well as the recipients of the subpoenas) as it may have a bearing on any objection under Rule 45(c)(2)(B) or application to quash made in those courts.

Normally, of course, it is improper to issue a discovery subpoena after the discovery deadline has passed. See McKay v. Triborough Bridge & Tunnel Auth., 2007 WL 3275918, at *2 (S.D.N.Y. Nov. 5, 2007) (citing cases). Here, however, the Court held a lengthy Court conference on May 1, 2009 to discuss what post-deadline discovery the plaintiffs might obtain as

a result of the recent production of materials relating to a settlement between Mega Bloks and the CPSC. See Transcript of May 1, 2009 Conference, filed May 12, 2009 (Docket # 205). At this conference, the Court asked plaintiffs to identify what discovery they believed they were entitled to as a result of the CPSC production. Id. at 10-11. No mention was made of any request to depose outside counsel (other than an attorney named Rick Locker, see id. at 14, whose deposition was not permitted and who is not named in the subpoenas). Accordingly, the subpoenas to Mega Bloks' outside lawyers are untimely and improper.

In responding to the Court's question, plaintiffs stated that they "would like to analyze the possibility of a subpoena to the CPSC." Id. at 19. They stated: "[w]e need to deal fundamentally with admissibility issues as to all of these documents we have since found. So we have to lay foundations for them." Id.; accord id. at 19-20 (confirming that the purpose of the proposed subpoena was to lay a foundation for some of the documents received in the recent production). Plaintiffs conceded that a foundation would not be needed for every document. Id. at 20. They also agreed that authenticity would likely not be an issue. Id. The Court noted that there would be admissibility problems with the documents with respect to relevance and that "we are going to have to go through [them] document by document if we have to." Id.

In addressing the request later in the conference, the Court initially raised the issue of whether anyone had researched the question of whether the CPSC would even comply with the subpoena. Id. at 82-83. The Court then wondered if whether this legal question should be investigated first. Id. at 83. Defendants asserted that going down this path could engender a lengthy dispute. Id. The Court countered by saying: "I doubt they could get it in time and I am not saying that they're necessarily entitled to it but I don't know that there's a reason to prevent them from trying. If they're able to get something, fine." Id. at 83-84.

Had the matter ended there, plaintiffs would have been justified in issuing a subpoena for testimony to lay a foundation for the documents previously produced. In fact, the colloquy continued after the defendants protested. The Court then asked plaintiffs to focus on precisely what testimony was being sought from the CPSC. Id. at 84. The colloquy was as follows:

> THE COURT: . . . so maybe we should figure out what documents – and I'll turn [to] the plaintiffs – what documents are you trying to get into evidence for which you need CPSC foundation?
> MR. SHUSTER: We will not object to authentication.
> THE COURT: Right. But there may be some business record foundation that you could or could not stipulate to but maybe the document's irrelevant but maybe it's a much simpler way to approach this. And I am willing if you want to, if you really want, to put this off so that you can put together the documents and say what you want and why you want them in and why they're admissible and maybe you can avoid the whole subpoena issue. As I say, I doubt you are going to get testimony from them anyway. Would you like to do that or do you want to tell me the documents now?
> MR. WOLF: May we have a moment to consult?

3

>THE COURT: Sure.
>(Pause)
>MR. WOLF: Your Honor, we're not prepared to put them together now.

Id. at 84-85.

On reading the transcript, the Court recognizes that its intention might not have been clear. Its intention was to give plaintiffs leave to make a new request to the Court that explained – once plaintiff understood which documents they wanted to put into evidence and what testimony was necessary to lay a foundation for those documents – what testimony plaintiffs would be seeking from the CPSC by means of subpoena. Perhaps plaintiffs understood the Court's statement to mean that they were free to seek this testimony without a further request to the Court.

It is not necessary to resolve this issue, however, because the only request before the Court was a subpoena for testimony to lay a foundation for the previously-produced documents. The CPSC subpoena, however, instead seeks documents – that is, "all documents involving MegaBrands." This request was never made at the May 1 conference and thus it is untimely.

Accordingly, the subpoena to the CPSC is also unauthorized.

SO ORDERED.

Dated: May 12, 2009
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

4