UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JEFFREY H. ROSEN, LAWRENCE I. ROSEN,
and SYDNEY ROSEN,

                    Plaintiffs,

          -v-                                            No. 06 Civ. 3474 (LTS)(GWG)

MEGA BLOKS, INC. and MB US INC.,

                    Defendants.

-------------------------------------------------------x


### MEMORANDUM OPINION AND ORDER

          This action arises out of the acquisition of a toy and stationery business, Rose Art,

previously owned by Sydney Rosen and his two sons, Jeffrey Rosen and Lawrence Rosen

("Plaintiffs" or the "Rosens"), by defendant Mega Bloks Inc. ("Mega Bloks"), a Canadian toy

corporation currently known as MEGA Brands Inc.  MB US Inc., a Delaware corporation and

Mega Bloks subsidiary (with Mega Bloks, "Defendants"), is also named as a defendant.  The Court

has subject matter jurisdiction of the controversy due to the complete diversity of the parties'

citizenship.  28 U.S.C. § 1332.

          The parties each moved to dismiss certain claims and counterclaims.  Magistrate

Judge Gabriel W. Gorenstein issued a Report and Recommendation, dated April 7, 2009 (the

"Report"), recommending that the motions be granted in part and denied in part.   Defendants

submitted timely objections to the Report.  Plaintiffs opposed Defendants' objections but abstained

from objecting to the Report themselves.  The Court has considered the Report and all of the

relevant submissions thoroughly.  For the following reasons, the Court adopts the Report and its

recommendations in their entirety.

When reviewing the Report, the Court "may accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate judge."  28 U.S.C.A. §

636(b)(1)(C) (West 2008).  The Court must make a *de novo* determination to the extent that a

party makes specific objections to a magistrate's findings.  <u>United States v. Male Juvenile</u>, 121

F.3d 34, 38 (2d Cir. 1997).  When a party makes only conclusory or general objections, or simply

reiterates its original arguments, the Court will review the Report strictly for clear error.  <u>See</u>

<u>Pearson-Fraser v. Bell Atl.</u>, No. 01 Civ. 2343, 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003);

<u>Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan</u>, 806 F. Supp. 380, 382

(W.D.N.Y. 1992).  Similarly, "objections that are merely perfunctory responses argued in an

attempt to engage the district court in a rehashing of the same arguments set forth in the original

[papers] will not suffice to invoke *de novo* review."  <u>Vega v. Artuz</u>, No. 97 Civ. 3775, 2002 WL

31174466, at *1 (S.D.N.Y. Sept. 30, 2002).  Objections to a Report must be specific and clearly

aimed at particular findings in the magistrate judge's proposal.  <u>Camardo</u>, 806 F. Supp. at 381-

82.

D<span style="font-variant:small-caps">ISCUSSION</span>

The Rosens and Mega Bloks entered into a Stock Purchase Agreement, dated June

5, 2005 ("SPA"), as well employment agreements under which Jeffrey Rosen and Lawrence Rosen

– but not Sydney Rosen – would continue to manage parts of the Rose Art business under Mega

Bloks' ownership.  The relationship between the Rosens and Mega Bloks quickly became

contentious owing, at least in part, to disputes surrounding the post-closing, or "earn-out,"

payments due to the Rosens under the SPA, and products liability litigation involving Magnetix, a Rose Art product.  At the time the parties commenced this motion practice, seventeen Magnetix-related suits had been settled by Mega Bloks, and five others were pending in various courts.

Plaintiffs seek a declaratory judgment that they are not required to indemnify Mega Bloks for any of the Magnetix suits that have been settled, that are currently pending, or that may be asserted in the future.  Defendants have moved to dismiss the declaratory judgment claim. Defendants have asserted counterclaims alleging breaches of contract and various duties in connection with Plaintiffs' Magnetix-related disclosures and the junior Rosens' management of the business post-closing.  Plaintiffs have moved to dismiss Defendants' three counterclaims asserted against Sydney Rosen and Defendants' counterclaims, as asserted against all Plaintiffs, based upon the New York common law torts of negligent misrepresentation and innocent misrepresentation. Lastly, Plaintiffs have moved to dismiss Defendants' breach of fiduciary duty counterclaim to the extent it is asserted by MB USA.  Magistrate Judge Gorenstein's Report recommends: (i) denying Defendants' motion to dismiss the declaratory judgment claim with respect to pending claims, but granting it with respect to past and future claims; (ii) granting Plaintiffs' motion to dismiss the counterclaims asserted against Sydney Rosen; (iii) granting Plaintiffs' motion to dismiss Defendants' negligent misrepresentation and innocent misrepresentation counterclaims; and (iv) denying Plaintiffs' motion to dismiss MB USA's breach of fiduciary duty counterclaim.

The Report's conclusions are amply supported by a thorough discussion that reflects a careful evaluation of the parties' submissions.  The Court concludes that the Report is devoid of any clear error and, accordingly, the Court adopts all of its recommendations that are not the subject of specific objections, and addresses the remaining recommendations in further detail below.

*The Declaratory Judgment Claim*

The Report concluded that the Rosens' request for a declaratory judgment regarding their indemnification liability in the pending Magnetix product liability cases presents an Article III controversy.  It further concluded that the controversy is sufficiently ripe and that judicial efficiency would be served by the Court's exercise of its discretion to adjudicate the claim. Defendants specifically object that the Report erred in its consideration of the justiciability issue by failing to consider the requirements of New York law and by relying on cases from the insurance context that are inapposite to the instant case.  However, under New York law, a declaratory judgment regarding a party's contractual indemnification obligation is justiciable where, as here, there are pending tort claims that could potentially give rise to an indemnification action and the resolution of the plaintiff's indemnification obligation entails the determination of an issue that is not otherwise a component of the pending tort cases.  Hollander v. Nationwide Mutual Ins. Co., 401 N.Y.S.2d 336, 338 (4th Dep't 1978) ("the matter in dispute here requires judicial interpretation of an exclusionary provision which will not arise in the pending negligence actions . . . Resolution of the disputed clause here should not await the determination of the principal actions.").

Defendants' argument that the insurance cases cited in the Report are inapposite because they entail a duty to defend, rather than merely a duty to indemnify, also misses the mark. Maryland Casualty Co. v. Pacific Coal & Oil Co. did not rely expressly on the plaintiff's duty to defend to support its conclusion that the declaratory judgment action presented a justiciable controversy under Article III, § 2 of the Constitution.  Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270 (1941).  Rather, the Court noted that the insurance contract between the parties established both a duty to defend and a duty to indemnify, and concluded broadly that "the facts alleged, under all the circumstances, show that there is a substantial controversy between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment."  Id. at 273.  In Empire Fire and Marine Insurance Co. v. ELRAC, Inc., the

court held justiciable an action seeking a declaratory judgment that the plaintiff's "excess"

insurance policy would not provide coverage to the defendant even if the defendant's liability, in a

separate state court action, were found to exceed the floor of the excess policy, based upon the

facts that gave rise to that separate action.  Empire Fire and Marine Ins. Co. v. ELRAC, Inc., No.

04 Civ. 10315, 2006 WL 3734308, *1 (S.D.N.Y. Dec. 18, 2006).  The plaintiff's excess insurance

policy did not place it under a duty to defend the defendant in the pending state court action; rather,

the plaintiff's potential obligations were completely contingent on the final judgment reached in

that action.  Nevertheless, the Empire Fire and Marine Ins. Co. court held:

> That the liability may be contingent does not necessarily defeat jurisdiction of a
> declaratory judgment action.  Rather, courts should focus on the practical likelihood
> that the contingencies will occur . . . the prospect of [the plaintiff] facing liability is
> real enough to make this an actual case or controversy.

Id. at *3.   In the instant case, upon de novo review, the Court concludes that the prospect of the

Rosens facing liability is similarly "real enough to make this an actual case or controversy."

Once a court has determined that a declaratory judgment action presents a

legitimate controversy, it must decide whether it would be a proper exercise of its discretion to

adjudicate it.  28 U.S.C.A. § 2201(a) (West 2006) ("in a case of actual controversy within its

jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of

any interested party seeking such declaration"(emphasis added)).  Defendants' objections to the

Report's recommendation that the Court exercise its discretion to adjudicate the declaratory

judgment merely reiterate arguments that were made before Judge Gorenstein.  The Court

concludes that the recommendation as to the propriety of exercising discretion is not clearly

erroneous and, accordingly, adopts it.[1]

### *The Counterclaims Against Sydney Rosen*

Defendants also specifically object to the Report's conclusion that the SPA

precludes the counterclaims asserted against Sydney Rosen, arguing that Section 2.6(a) of the SPA

provides a basis for asserting their breach of contract claim. Defendants correctly assert that

Section 8.7 of the SPA allows Defendants to raise certain enumerated potential claims other than

those contemplated by Article VIII, including those contemplated by Section 2.6. The provision

within Section 2.6 that Defendants rely upon, Section 2.6(a)(v), provides as follows:

> (A) Mutual intent of the parties. Sellers [defined to include all three Rosens]
> acknowledge that upon the Closing and except as otherwise provided to the
> contrary in this Section 2.6, (i) Buyer [Mega Bloks] has the right to operate the
> Subject Companies and Buyer's other businesses in any way that Buyer deems
> appropriate in Buyer's sole discretion and (ii) neither Buyer nor any of its
> Representatives has made, and the Sellers hereby specifically disclaim reliance on,
> any representations, warranty, agreement or any other statement made by Buyers or
> any of its Representatives . . . Notwithstanding the foregoing, Buyer and Seller
> acknowledge it is their mutual intention that the businesses of the Subject
> Companies be operated in 2005 in the Ordinary Course of Business . . .
> Accordingly, Buyer and the Seller agree that:
>
> (B) Buyer 2005 Conduct. [. . .] Buyer shall not, without the prior unanimous
> written consent of Jeffrey H. Rosen and Lawrence I. Rosen, make any material
> change in the management and operation of the Subject Companies . . .
>
> (C) Seller 2005 Conduct. In or in respect of the businesses and 2005 financial
> results of the Subject Companies, without the prior written consent of the Buyer,
> Jeffrey H. Rosen and Lawrence L. Rosen shall not take or fail to take any decisions
> or action, or engage or fail to engage in any conduct, that will [undermine Buyer's
> interests in various specified ways . . .].

SPA § 2.6(a)(v)(A)-(C). Section 2.6 does not, however, contain any covenants undertaken by

Sydney Rosen that could provide a basis for the breach of contract counterclaim asserted against

---

[1]     The Court notes that it would reach the same conclusion upon *de novo* review.

him. Section 2.6(a)(v)(A) is merely a statement of intention that provides context for the covenants undertaken by Mega Bloks, Jeffrey Rosen and Lawrence Rosen in the provisions that follow it. Accordingly, on *de novo* review, the Court concludes that the breach of contract counterclaim must be dismissed as against Sydney Rosen.

Defendants did not specifically object to the recommendation that the other two counterclaims asserted against Sydney Rosen be dismissed. Those recommendations are not the product of clear error and, accordingly, are adopted.

### *Defendants' Common Law Tort Claims*

Defendants specifically object to the Report's conclusion that Section 8.7 of the SPA precludes Mega Bloks from asserting its common law tort claims. Section 8.7 restricts the parties from asserting any claim, other than a fraud claim, that is not contemplated by the remedy provisions of the SPA itself. Defendants' objection premised upon Section 8.7 relies on a strained reading of the plain language of the contract that is unavailing. The Court concludes on *de novo* review that these claims are precluded.

### CONCLUSION

The Report is adopted in its entirety. Defendants' motion to dismiss Plaintiffs' declaratory judgment claim is denied with respect to the claims currently pending against Defendants, but granted with respect to previously settled claims and future claims. Plaintiffs' motion to dismiss all counterclaims asserted against Sydney Rosen is granted. Plaintiffs' motion to dismiss Defendants' counterclaims premised upon the New York common law torts of negligent misrepresentation and innocent misrepresentation is granted. Plaintiffs' motion to dismiss Defendant MB USA Inc.'s breach of fiduciary duty claim is denied. This Memorandum Opinion

and Order resolves docket entry nos. 153 and 162.

SO ORDERED.

Dated: New York, New York
May 19, 2009

LAURA TAYLOR SWAIN
United States District Judge